# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CATHY COOPER, | : | Case No. 3:17-cv-374 |
| Plaintiff, | : | |
| vs. | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Cathy Cooper brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on May 31, 2014, asserting that she could no longer work a substantial paid job. After a hearing, Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), and the administrative record (Doc. #s 6, 12).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since March 15, 2007. She was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has since changed categories to a person "closely approaching advanced age." *See id.* §§ 404.1563(d), 416.963(d). She has a tenth-grade—or limited—education. *See id.* §§ 404.1564(b)(3), 416.964(b)(3).[2]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that she has trouble with her knees and back. (Doc. #6, *PageID* #135). She has tried physical therapy numerous times and it helped. *Id.* Plaintiff has also had injections in her knee. They "helped. I didn't feel … pressure the way I did before. It didn't take away the pain completely, but it did help me." *Id.* at 137.

Plaintiff estimated that she could stand for five minutes before her knees "lock[] up." *Id.* at 132. She can "barely [walk] down a block without having to rest." *Id.* She can sit for thirty minutes before she has trouble with her back. *Id.*

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Plaintiff has asthma with several triggers, including for instance, pollen, dust, hairspray, incense, the heat, and hot water. *Id*. She uses a breathing-treatment machine at home once a day. *Id.* At the time of the hearing, Dr. Kyoto was treating Plaintiff's asthma, along with high blood pressure and high cholesterol. *Id.* at 136.

Plaintiff struggles with depression and anxiety. She gets "real nervous" when she has plans to do something and when she has to be around people. *Id.* at 139. Plaintiff has crying spells and times when she cannot take care of herself. *Id*. She sees her psychiatrist, Dr. Budding, once a month and he prescribes medication. *Id.* at 138-39. She used to see a therapist but stopped the year before the hearing. *Id.* at 138. Plaintiff is "supposed to" set up an appointment to continue therapy. *Id*. However, she keeps putting it off. At the end of 2015, she was admitted at the hospital for three days because she could not stop crying, she stopped eating, and she started hearing and seeing things. *Id.* at 139.

Plaintiff lives in an upstairs apartment by herself. *Id.* at 129-30. She has to climb eight steps to get to her door. *Id*. She has trouble navigating the stairs because of her knee; "Just when I'm putting a lot of pressure on it, it gives me a lot of pain." *Id.* at 130. She has never had a driver's license. *Id.* To get around, she uses public transportation or her daughter drives her. *Id.* Plaintiff only leaves her apartment two to three times a month. *Id.* She attends doctors' appointments and sees her probation officer. *Id.* at 131. Her daughter visits her about twice a week and helps her with grocery shopping. *Id.* If Plaintiff goes to the grocery, she has to "get in and out" because she starts having anxiety attacks and sweating. *Id.*

During the day, she watches television. *Id.* at 133. She is most comfortable lying on her back and usually spends most of her day—18 hours—lying down. *Id.* at 132-33. Plaintiff is able to prepare small meals if she can make it quickly. *Id.* at 131. She does laundry once a month, when her daughter takes Plaintiff to her house. *Id.* at 131, 141.

**B.     Medical Opinions**

    *i.     Barbara Akoto, M.D.*

Plaintiff's primary-care physician, Dr. Akota, completed a Basic Medical assessment in May 2015. She diagnosed chronic back pain, asthma, history of cervical cancer, and depression. *Id.* at 710. She opined Plaintiff's health status was poor but stable. *Id.* Her noted findings include "tenderness in lumbar spine with difficulty walking." *Id.*

Dr. Akoto opined that Plaintiff can stand/walk for one hour without interruption for a total of two hours in an eight-hour workday. *Id.* at 711. She can sit for one hour without interruption for a total of two hours. Plaintiff can frequently lift/carry up to twenty pounds and occasionally lift/carry up to ten pounds. *Id.* Further, her ability to push, pull, bend, and perform repetitive movements is extremely limited. *Id.* Dr. Akoto indicated that her limitations are expected to last twelve months or more. *Id.* She concluded that Plaintiff is unemployable. *Id.*

    *ii.     Paul Tangeman, Ph.D., & Leslie Rudy, Ph.D.*

Dr. Tangeman reviewed Plaintiff's records in September 2014 and found that she has nine severe impairments—essential hypertension; osteoarthrosis and allied disorders; other and unspecific arthropathies; affective disorders; schizophrenia and other psychotic

4

disorders; alcohol, substance addiction disorders; drugs, substance addiction disorders; anxiety disorders; and personality disorders. (Doc. #12, *PageID* #1124). In January 2015, Dr. Rudy reviewed Plaintiff's records and affirmed Dr. Tangeman's findings. *Id.* at 1155.

      *iii.*  *Sreenivas Venkatachala, M.D., & Diane Manos, M.D.*

In September 2014, Dr. Venkatachala reviewed Plaintiff's records. *Id.* at 1118-31. He opined that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 1126. She can stand and/or walk for six hours in an eight-hour workday and sit for six hours. *Id.* at 1126-27. She can frequently push and/or pull with her right lower extremities. *Id.* at 1127. Dr. Venkatachala found that Plaintiff cannot climb ladders, ropes, or scaffolds. *Id.* She can occasionally kneel, crouch, or crawl and can frequently balance, stoop, or climb ramps/stairs. *Id*. She should avoid all exposure to hazards such as unprotected heights. *Id.* at 1128. Dr. Venkatachala concluded that Plaintiff is not disabled. *Id.* at 1131.

In January 2015, Dr. Manos reviewed Plaintiff's records and affirmed Dr. Venkatachala's assessment with one exception—Dr. Manos opined that Plaintiff can stoop occasionally. *Id.* at 1149-64.

**III.**   **<u>Standard of Review</u>**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security

5

Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since March 15, 2007.

Step 2: She has the severe impairments of lumbar spondylosis; osteoarthritis of the knees; hypertension; asthma; mood disorder; anxiety; post-traumatic stress disorder; alcohol abuse; cannabis dependence in remission; and schizophrenia.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) occasional pushing and pulling with the right lower extremity; (2) no climbing ladders, ropes, or scaffolds; (3) occasional climbing of ramps and stairs; (4) frequent balancing and stooping; (5) occasional kneeling, crouching, and crawling; (6) no work at unprotected heights; (7) must avoid concentrated exposure to extreme heat and humidity; (8) must avoid concentrated exposure to fumes, dusts, gases, odors, and poorly ventilated areas; (9) is limited to simple, routine tasks; (10) in a static work environment with few

>changes in routine; (11) no fast paced work or strict production quotas; (12) and occasional interaction with the public, coworkers, and supervisors."

Step 4: She does not have any past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 57-71). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 70.

## V. Discussion

Plaintiff contends that the ALJ erred in evaluating the opinion of her treating physician, Dr. Akoto.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

8

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2P, 1996 WL 374188, at *5 (July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Hockensmith assigned some weight to Dr. Akoto's opinion and provided some reasons. However, his evaluation of her opinion does not acknowledge or meaningfully consider whether it is entitled to controlling weight under the treating physician rule. Instead, the ALJ appears to have skipped straight to the factors.

Although he appears to have skipped over the treating physician rule, the ALJ's decision is muddled because there is some question as to whether the ALJ intended to address supportability as a factor or the first condition of the treating physician rule—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. Likewise, it is unclear whether the ALJ intended to discuss consistency as a factor or the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence. If the ALJ was referring to the conditions under the treating physician rule, then he failed to address the

factors. *See Blakley*, 581 F.3d at 406 ("If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors …."); Soc. Sec. R. 96-2P, 1996 WL 374188, at *4.

Given the ALJ's failure to mention whether Dr. Akota's opinion is entitled to controlling or even deferential weight, it appears more likely that the ALJ is addressing the factors. This constitutes error because the "supportability" and "consistency" factors, along with the others listed in the Regulations, "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376 (emphasis added) (citation omitted). Indeed, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Id*. The ALJ's process ignored this. Instead, his focus on the supportability and consistency factors leaves it uncertain (at best) whether he addressed, or even considered, whether Dr. Akoto's opinion was entitled to "controlling weight." This uncertainty conflicts with the requirement that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2P, 1996 WL 374188, at *5.

Nonetheless, the ALJ did provide some reasons for discounting Dr. Akoto's opinion; he found that it was internally inconsistent, not supported by other evidence in the record, and inconsistent with her own treatment notes. (Doc. #6, *PageID* #68). Looking first at internal inconsistency, the ALJ explained, "Dr. Akoto felt that [Plaintiff] could only sit, stand/walk for two hours during the day, yet also indicated that [she] could frequently lift up to twenty pounds." *Id.* The problem, according to the ALJ and

10

Commissioner, arises from the definition of frequently—that is, up to two-thirds of an eight-hour day. *Id.* at 711. Two-thirds of eight hours is five hours and twenty minutes. If Plaintiff can only stand/walk and sit for four hours, there is one hour and twenty minutes left for lifting/carrying that cannot be done while standing, walking, or sitting.

The Commissioner contends that a person can only lift or carry when the person is walking, standing, or sitting, but that is not necessarily true. A person could lift while lying down (i.e. bench pressing). Further, the questions on the form are somewhat puzzling. While the first questions ask for the number of hours in an eight-hour *workday*, the definition of frequent is "up to 2/3 of 8 hour *day*." *Id*. (emphasis added). Thus, if one considers two different eight-hour periods—or even two overlapping eight-hour periods—then her opinion is not internally inconsistent.

Importantly, Dr. Kyoto is not an expert in Social Security; she is Plaintiff's treating physician. And, as a treating physician, her opinion is entitled to deference. *See* Soc. Sec. R. 96-2P, 1996 WL 374188, at *4 ("Treating source medical opinions are still entitled to deference and must be weighed using all of the factors …."); 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence …."). This questionable inconsistency fails to impugn the credibility of her opinion.

The ALJ further discounted Dr. Akoto's opinion because it is not supported by the other evidence in the record. More specifically, "the diagnostic findings in [Plaintiff's]

11

record do not support Dr. Akoto's extreme exertional and postural limitations." (Doc. #6, *PageID* #68) (citing Exhibit 3F/6; 9F/1; 13F/1, 9, 10, 12 [Doc. #6, *PageID* #s 417, 690, 735, 743-44, 746]). The ALJ cites to records that reveal mild problems, for example, an MRI of Plaintiff's right knee showed "Cartilage loss in the medial compartment and along the posterior aspect of the lateral femoral condyle with marrow edema in the underlying femur"; an x-ray of Plaintiff's right knee revealed "mild degenerative/osteoarthritic spurring and joint space narrowing in the medial tibiofemoral compartment" and "small joint effusion"; and an x-ray of Plaintiff's left hip showed mild left hip and sacroiliac joint osteoarthritis. *Id.* at 417, 735, 746.

There are two problems. First, the ALJ ignores an important component of the treating physician rule—"Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that *cannot be obtained* from the objective medical findings alone or from reports of individual examinations …." 20 C.F.R. § 404.1527(c)(2) (emphasis added). Second, the ALJ assumes Dr. Akoto based her opinion solely on Plaintiff's back, knee, and hip problems. However, Dr. Akoto indicated Plaintiff has several medical conditions, including asthma and depression, that contribute to her limitations. (Doc. #6, *PageID* #710).

The ALJ found that "the evidence reflects that the claimant lives independently and is able to climb stairs and get in and out of her apartment." *Id.* at 68. But the ability to live independently and walk up or down eight stairs does not constitute substantial

evidence in support of the ALJ's conclusion. Those facts alone say little, if anything, about Plaintiff's condition. Although she lives alone, she only leaves the house three times a month. *Id.* at 130. Her daughter, moreover, provides significant support, such as grocery shopping. *Id.* at 131. Further, Plaintiff's ability to walk up or down eight stairs and live by herself is not inconsistent with Dr. Akoto's opinion.

Last, the ALJ discounted Dr. Akoto's opinion because her limitations are inconsistent with her own treatment records. *Id.* at 68 (citing Exhibit 9F; 14F [Doc. #6, *PageID* #s 690-708, 747-77]). In support, the ALJ cites fifty pages without noting the significance of any particular page. And, a review of those records does not reveal any obvious inconsistencies with Dr. Akoto's opined limitations. Some support her opinion. *See id.* at 691 ("Positive for gait problem."); *id.* at 702 (Plaintiff reporting joint pain and stiffness); *id.* at 760 (Plaintiff "exhibits tenderness").

In sum, substantial evidence does not support the ALJ's reasons for discounting Dr. Akoto's opinion. Accordingly, Plaintiff's Statement of Errors is well taken.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Cathy Cooper was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

September 6, 2019                                *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).